| | |
|---|---|
| | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEANNA PAGE, individually and as the successor in interest for LAFAYETTE PAGE,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MADERA, MADERA COUNTY DEPARTMENT OF CORRECTIONS, MADERA COUNTY DEPARTMENT OF MENTAL HEALTH, CORPORAL J. CAMPOS, OFFICER V. LESAGE, OFFICER M. GARRETT, AND CALIFORNIA FORENSIC MEDICAL GROUP, INC.,<br><br>Defendants. | No. 1:17-cv-00849-DAD-EPG<br><br><u>ORDER GRANTING IN PART MOTION TO DISMISS AND STRIKING SIXTH CAUSE OF ACTION AS REDUNDANT</u><br><br>(Doc. No. 16) |

On September 1, 2017, defendants County of Madera, Madera County Department of Corrections, and Madera County Department of Mental Health, along with individual defendants LeSage and Garrett (hereafter referred to in this order as the "defendants"[1]), moved to dismiss the third, fourth, fifth, and sixth causes of action of plaintiff's complaint. (Doc. No. 16-1.) Plaintiff

---

[1] Individual defendant Jorge Campos is represented by separate counsel and has filed an answer. (*See* Doc. Nos. 15, 20.) Defendant California Forensic Medical Group, Inc. ("CFMG") belatedly appeared in the case, filing an answer on September 29, 2017. (Doc. No. 23.) At oral argument, plaintiff waived any objection to CFMG's untimely response.

1

filed an opposition on September 19, 2017.  (Doc. No. 19.)  Defendants replied on September 26, 2017.  (Doc. No. 21.)  On October 3, 2017, the court held a hearing on this motion.  Attorney Thomas Helm appeared on behalf of plaintiff.  Attorney Michelle Sassano appeared on behalf of defendants Madera County, LeSage, and Garrett.  Attorney Gary Goyette appeared on behalf of defendant Campos.  Attorney Peter Bertling appeared on behalf of defendant California Forensic Medical Group, Inc.  All counsel appeared telephonically.  For the reasons set forth below, the court will grant the motion to dismiss in part.

**BACKGROUND**

This case stems from the suicide of Lafayette Page while he was being housed at the Madera County Jail.  Plaintiff Roseanna Page, Mr. Page's widow, alleges in her complaint as follows.  Lafayette Page, who was 33 years old at the time of his death, was booked into the Madera County Jail in the early morning hours of May 21, 2016.  (Doc. No. 1 at ¶¶ 15–16.)  Mr. Page told a correctional officer at the jail, who is not named as a defendant here, that he wanted to commit suicide either by "cutting himself with a razor blade or by hanging himself with a sheet."  (*Id.* at ¶ 17.)  That officer confiscated Page's razor and reported the conversation to his supervisor.  (*Id.*)  Mr. Page then told another officer that "he heard voices telling him to hurt himself," following which Mr. Page was moved to a "safety cell."[2]  (*Id.*)

The next day, May 22, 2016, Mr. Page told still another correctional officer that he needed to see a medical provider because of his "extreme anxiety."  (*Id.* at ¶ 18.)  Two nurses for defendant CFMG checked on Mr. Page, who told them he was experiencing psychosis and wanted to kill himself.  (*Id.*)  At that point, defendant Campos and another correctional officer placed Mr. Page in Intake Cell 4.  (*Id.*)  Mr. Page was removed from Intake Cell 4 and placed back in Cell K-22 at approximately 10:00 p.m. that night by defendants Campos, LeSage, and Garrett for unknown reasons.  (*Id.* at ¶ 19.)  Mr. Page hanged himself shortly thereafter with a rope made from a sheet tied to the bookshelf in Cell K-22.  (*Id.*)  Page was discovered during a routine cell check at 10:35 p.m., and was taken to the hospital in a comatose condition.  (*Id.* at

---

[2]  Mr. Page had initially been housed in Cell K-22, in the administrative segregation area of the jail, because he had previously assisted law enforcement by providing information.  (*Id.* at ¶ 16.)

2

¶ 20.) Though a pulse and respiration were restored, Mr. Page never regained consciousness, and died on May 28, 2016 when life support was terminated. (*Id.*)

Mr. Page's widow brought this case alleging seven different causes of action: (1) deliberate indifference to medical and mental health needs in violation of the Fourth and Fourteenth Amendments against the individual defendants; (2) deliberate indifference to medical and mental health needs against defendants County of Madera and CFMG; (3) violation of Title II and Title III of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by defendants County of Madera and CFMG; (4) violation of the Bane Act, California Civil Code § 52.1 against all defendants; (5) negligence against all defendants; (6) violation of California Government Code § 845.6 against all defendants; and (7) violation of California Civil Code § 51 against CMFG. (Doc. No. 1 at 11–23.) Through their pending motion, defendants seek dismissal of plaintiff's third, fourth, fifth, and sixth causes of action. (Doc. No. 16-1 at 2–3.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed

factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**ANALYSIS**

**A.     The ADA and RA Claims**

Defendants moved to dismiss plaintiff's third cause of action for violation of Title II of the ADA and § 504 of the RA, arguing that the ADA/RA[3] only prohibits discrimination, not inadequate treatment of a disability by jail staff. (Doc. No. 16-1 at 3–5.) Plaintiff argues that the complaint alleges a failure to accommodate claim, rather than a discrimination claim. (Doc. No. 19 at 13–16.)

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The phrase "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R.

---

[3] Title II of the ADA was expressly modeled after § 504 of the RA, and there is "no significant difference in analysis of the rights and obligations created by the ADA and the [RA]." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999). Accordingly, the ADA and RA claims will be addressed together here.

4

§ 35.130(b)(7)(i). "A plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim." *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004). Nor does a plaintiff need to compare her treatment with others who are similarly situated but lack her disability, because the "crux of a reasonable accommodation claim is a facially neutral requirement that is consistently enforced." *Id.* at 1266–67 ("The purpose of the ADA's reasonable accommodation requirement is to guard against the facade of 'equal treatment' when particular accommodations are necessary to level the playing field."); *see also Cohen v. City of Culver City*, 754 F.3d 690, 700 (9th Cir. 2014) ("Even facially neutral government actions that apply equally to disabled and nondisabled persons may violate Title II if the public entity has failed to make reasonable accommodations to avoid unduly burdening disabled persons.").

To plead a failure to accommodate under the ADA or RA, a plaintiff must allege facts sufficient to make the following elements plausible: "(1) she is a qualified individual with a disability; (2) she was denied 'a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services;' and (3) the program providing the benefit receives federal financial assistance." *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (quoting *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010)). Further, in order to seek damages with respect to such a claim, "plaintiffs must prove a *mens rea* of intentional discrimination and that standard may be met by showing deliberate indifference, not only by showing discriminatory animus." *A.G.*, 815 F.3d at 1204 (internal quotations, brackets, and ellipses omitted) (quoting *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008)); *see also Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001). A correctional facility's "deliberate refusal" to accommodate plaintiff's disability-related needs violates the ADA and the RA. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) ("[T]he alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted [an ADA violation]." (internal quotation omitted)); *see also Pierce v. County of*

/////

*Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008) ("[A]n inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone.").

However, the mere negligent provision of medical treatment alone does not constitute an unlawful failure to accommodate under the ADA or RA. *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *see also Figueira by and through Castillo v. County of Sutter*, No. 2:15-cv-00500-KJM-AC, 2015 WL 6449151, at *8–9 (E.D. Cal. Oct. 23, 2015); *Estate of Bock ex rel. Bock v. County of Sutter*, No. 2:11-cv-00536-MCE-GGH, 2012 WL 423704, at *9–10 (E.D. Cal. Feb. 8, 2012). Here, plaintiff alleges in the complaint that numerous alternative courses of action could have been taken by the jail in order to prevent Mr. Page's suicide. (Doc. No. 1 at ¶ 31) (suggesting decedent could have been transferred to another facility, monitored continuously, or provided with a safety smock). The court finds that these allegations are tantamount to alleging that plaintiff was provided with inadequate medical treatment, which is insufficient to state a failure to accommodate claim under the ADA or RA. *See Simmons*, 609 F.3d at 1022.[4] Plaintiff's ADA and RA claims will therefore be dismissed without leave to

/////

/////

/////

/////

/////

---

[4] Some courts have suggested that a complete deprivation of necessary treatment may be "so unreasonable as to demonstrate that [the defendants] were discriminating against [plaintiff] because of his disability." *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 284–85 (1st Cir. 2006); *see also O'Guinn v. Nev. Dep't of Corr.*, 468 Fed. App'x 651, 653 (9th Cir. 2012) (reaffirming *Simmons*, but suggesting claim may have been cognizable if there was "a total lack of treatment"); *Anderson v. County of Siskiyou*, No. C 10-01428 SBA, 2010 WL 3619821, at *5 (N.D. Cal. Sept. 13, 2010) ("The ADA may be violated where there is an 'outright denial of medical services.'") (quoting *Kiman*, 451 F.3d at 284–85). However, plaintiff has not alleged a complete and total lack of treatment here. Rather, plaintiff alleges defendants took numerous, albeit insufficient, steps to address Mr. Page's complaints of suicidal ideation, anxiety, and psychosis. (Doc. No. 1 at ¶¶ 15–20) (alleging that defendant's agents responded to Mr. Page's complaints, moved him between cells, and summoned medical providers).

amend.[5]

**B. Bane Act**

Defendants next move to dismiss plaintiff's Bane Act claim, arguing that any such claim requires threats, intimidation, or coercion, and that there simply cannot be threats, intimidation, or coercion in a case premised on an alleged failure to act. (Doc. No. 16-1 at 5–7.)

The California Bane Act protects against interference "by threat, intimidation, or coercion" or an attempt to do the same "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). "[T]he relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct." *Dillman v. Tuolumne County*, 1:13-cv-00404-LJO-SKO, 2013 WL 1907379, at *20 (E.D. Cal. May 7, 2013); *see also Morse v. County of Merced*, No. 1:16-cv-00142-DAD-SKO, 2016 WL 4000406, at *1–2 (E.D. Cal. July 25, 2016). A Bane Act claim requires conduct that is "more egregious" than "mere negligence." *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 958 (2012). As this court has noted, district courts in California have yet to reach a consensus as to whether a plaintiff bringing a Bane Act claim for deliberate indifference to serious medical needs must plead threats and coercion independent of the constitutional violation. *See Atayde v. Napa State Hospital*, No. 1:16-cv-00398-DAD-SAB, 2016 WL 4943959, at *7–8 (E.D. Cal. Sept. 16, 2016) (*comparing M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013), *with Moreno v. L.A. Cty. Sheriff's Dep't*, No. 2:13-cv-07570-CAS(MANx), 2015 WL 4652637, at *18 (C.D. Cal. Aug. 3, 2015)). However, the undersigned has concluded that threats, coercion

---

[5] In her opposition, plaintiff summarily requested leave to amend any claims dismissed by the court . (Doc. No. 19 at 24.) However, there would not appear to be any additional factual allegations that would cure the deficiencies in plaintiff's ADA and RA claims that would also be "consistent with the challenged pleading." *Garmon v. County of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)). Nevertheless, amended complaints that are factually inconsistent with prior pleadings are not to be struck solely on that basis. *See Shirley v. Univ. of Idaho, Coll. of Law*, 800 F.3d 1193, 1194 (9th Cir. 2015) (Kozinski, J., concurring) (citing *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007)). Therefore, while leave to amend will not be granted, this denial is without prejudice to a motion seeking further leave to amend in which it is demonstrated how a proposed amendment of plaintiff's ADA and RA claims would not be futile.

7

and intimidation are inherent in deliberate indifference claims, which "extend[ ] . . . 'far beyond [an] ordinary tort claim[ ].'" *Atayde*, 2016 WL 4943959, at *8 (quoting *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004)).

Defendant cites to the decisions in *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959 (N.D. Cal. 2017) and *Lopez v. County of Tulare*, No. CV-F-11-1547-LJO-BAM, 2012 WL 33244 (E.D. Cal. 2012) in contending that plaintiff may not allege a Bane Act claim here. (Doc. No. 16-1 at 5–6.) In *Hernandez*, the district court concluded that a failure to act does not constitute a violation of the Bane Act, because some affirmative action is required. 241 F. Supp. 3d at 981. In *Lopez*, the court concluded that "[i]ncarceration coupled with deliberate indifference to medical and psychiatric needs does not constitute 'threats, intimidation, or coercion' for purposes of section 52.1." 2012 WL 33244, at *11. The undersigned has considered these decisions but comes, as have other district courts, to the opposite conclusion and therefore reaffirms its prior holding and reasoning.[6] Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials "knowingly deprived [them] of a constitutional right or protection through acts that are inherently coercive and threatening," such as housing a prisoner in an inappropriate cell, failing to provide treatment plans or adequate mental health care, and failing to provide sufficient observations. *Atayde*, 2016 WL 4943959, at *8, n.1.

Moreover, here there are allegations that "threats, intimidation, or coercion" were used against Mr. Page. In particular, the complaint alleges that when defendants Campos, LeSage, and Garrett came to move the decedent from Intake Cell 4 to Cell K-22, where he ultimately hanged himself, Mr. Page "attempted to hide under the bench in the cell." (Doc. No. 1 at ¶ 19.) Further, it is alleged "[t]he officers used control holds to move Mr. Page forcefully back to Cell K-22." (*Id.*) Plaintiff alleges, among other things, that the act of putting the decedent Mr. Page back in Cell K-22, which was unsafe for a suicidal inmate, was done with deliberate indifference to his

---

[6] "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986). The California Supreme Court has not resolved this issue, and its most recent discussion of Civil Code § 52.1 suggested the statute be read broadly. *Venegas*, 32 Cal. 4th at 842–43 (holding § 52.1 does not require the victim to be targeted because of "an actual or perceived class or characteristic") (emphasis omitted).

8

medical and mental health needs. (*Id.*) Therefore, even if specific allegations of threats, intimidation, or coercion are required to state a deliberate indifference claim under the Bane Act, here plaintiff has sufficiently alleged physical coercion occurred in conjunction with the constitutional violation.[7]

**C.     Negligence**

Defendants assert that no negligence claims are stated against the public entity defendants for two reasons: (1) plaintiff has not identified a statutory basis for this liability; and (2) the individual defendants may not be found liable under California Government Code § 845.6 because there are no allegations that they knew Mr. Page was suicidal or had any control over where he was housed.[8] (Doc. No. 16-1 at 7–9.) Plaintiff responds that "[t]he Complaint alleges that the individual Defendants or Madera County had actual or constructive knowledge of Mr. Page's need for medical care, and ultimately that is an issue of fact for the jury." (Doc. No. 19 at 22.)

/////

---

[7] The court finds unpersuasive defendants' argument that they cannot be liable under the Bane Act because plaintiff has failed to identify a statute as the basis for liability. (*See* Doc. No. 16-1 at 7.) Plaintiff has identified the Bane Act, California Civil Code § 52.1, as the statutory basis for liability.

[8] It would appear plaintiff's fifth and sixth causes of action—for negligence and for violation of Government Code § 845.6—are, in fact, one cause of action. Government Code § 845.6 does not provide for a separate cause of action: instead, it provides immunity to certain defendants alleged to have caused injury by failing to provide appropriate medical care for prisoners in their custody, except in identified situations. Therefore, any negligence claim alleged by plaintiff based on defendants' failure to provide Mr. Page with medical care must fit within the exception in order to be brought. *See Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1071 (2013) (noting that the state may be liable for failure to summon medical care under § 845.6, but not for negligence in providing care); *Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1382–85 (2010) (explaining that the basic function of the California Tort Claims Act is to provide immunity to liability, with certain statutory exceptions). Therefore, to the extent plaintiff brings a negligence claim based on failure to provide the decedent with medical care, it must fit within § 845.6. Plaintiff's sixth cause of action will therefore be stricken by the court as redundant. *See* Fed. R. Civ. P. 12(f) (noting the court may act "on its own"); *Health v. Global Excel Mgmt.*, No. C-14-04226 DMR, 2015 WL 1359154, at *2 (N.D. Cal. Mar. 25, 2015) ("[U]pon motion or *sua sponte*, a court may strike 'from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'").

Concerning the first argument, in California, public entities are not liable for injuries "except as otherwise provided by statute." Cal. Gov. Code § 815(a). "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment." Cal. Gov. Code § 815.2. Plaintiff alleges that the public entity defendants are "vicariously liable for the acts of its employees pursuant to Cal. Gov't Code § 815.2." (Doc. No. 1 at 21.) Plaintiff has identified Government Code § 815.2 as the statutory basis for the public entity defendants' liability and defendants' motion to dismiss is, in this regard, denied.

California Government Code § 845.6 states:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

To state a claim falling within the exception in § 845.6, a plaintiff must allege "(1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). Plaintiff alleges defendants Campos, LeSage, and Garrett were responsible for moving the decedent back from Intake Cell 4 to Cell K-22, where he ultimately hanged himself, and that the decedent had made numerous statements indicating he was suicidal. (Doc. No. 1 at ¶¶ 15–20.) Taken together, the court concludes there are sufficient factual allegations from which it can be inferred that the

/////
/////
/////
/////
/////
/////
/////

defendant employees had "reason to know" of decedent's need for immediate medical care. Defendants' motion to dismiss will therefore be denied as to this cause of action.[9]

**CONCLUSION**

For the reasons set forth above:

1. Defendants' motion to dismiss (Doc. No. 16) is granted in part and denied in part;

2. Plaintiff's third cause of action alleging ADA and RA claims is dismissed without leave to amend, but without prejudice to a subsequent motion to amend;

3. Plaintiff's sixth cause of action is struck as redundant;

4. The moving defendants shall respond to the complaint within twenty-one days of the service of this order; and

5. The action is referred to the assigned magistrate judge for an initial scheduling conference.

IT IS SO ORDERED.

Dated: __December 2, 2017__        _____
                                    UNITED STATES DISTRICT JUDGE

---

[9] Defendants' motion also briefly references Government Code §§ 855.8 and 856, but provides no discussion of their application here. (*See* Doc. No. 16-1 at 9.) Plaintiff argues these code sections are inapplicable. (Doc. No. 19 at 22–23.) Defendants contend for the first time in their reply that § 855.8 and yet another provision—Government Code § 855.6—provide immunity for the individual defendants here. (Doc. No. 21 at 9.) The court will not address the application of §§ 855.6 or 856 here, as the defendant did not raise the former until the reply brief and apparently abandoned any argument based on the latter. *See Chavez v. AmeriGas Propane, Inc.*, No. CV 13-05813 MMM (MANx), 2015 WL 12859721, at *4 n.44 (C.D. Cal. Feb. 11, 2015) (noting courts have discretion as to whether or not to consider new arguments raise for the first time in reply); *Escareno v. Bangs*, No. CV-06-5005-EFS, 2007 WL 4287273, at *3 (E.D. Wash. Dec. 4, 2007) ("Issues raised in a brief that are not supported by argument are deemed abandoned."). Section 855.8 states that neither public entities nor employees are liable for injuries "resulting from diagnosing or failing to diagnose that a person is afflicted with mental illness." Cal. Gov't Code § 855.8(a). Plaintiff does not allege defendants failed to diagnose Mr. Page as suicidal. Instead, plaintiff alleges Mr. Page told various jail staff that he was suicidal, which the court has already concluded supports a plausible inference that defendants knew he was suicidal.

11